UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHLOÉ, a division of RICHEMONT NORTH AMERICA, INC. and CHLOÉ, S.A.,

                Plaintiffs,

-against-

QUEEN BEE OF BEVERLY HILLS, LLC, et al.,

                Defendants.

06 Civ. 3140 (RJH)(MHD)

**<u>MEMORANDUM OPINION AND ORDER</u>**

---

      This is an action for trademark infringement brought by plaintiffs Chloé and Chloé, S.A. (collectively, "Plaintiffs") against defendants Queen Bee of Beverly Hills, LLC, Sun-Eye Productions, Inc. ("Sun-Eye"), Rebecca Rushing, Simone Ubaldelli, Jennifer Suns, Mohammad Zarafshan a/k/a Alexander Zar, and John Does 2–20.[1] Plaintiffs design and market women's clothing and accessories, including handbags, which are sold under Chloé, S.A.'s registered CHLOÉ trademark (Benscher Decl. Ex. C, Nov. 5, 2007). Plaintiffs' action arises out of the defendants' alleged involvement in the sale and offer for sale of counterfeit Chloé handbags on the internet and out of offices in Huntsville, Alabama and/or Beverly Hills, California.

      Currently pending before the Court are defendant Ubaldelli's motion to dismiss for lack of personal jurisdiction and Plaintiffs' motion for partial summary judgment against Ubaldelli.

---

[1] Plaintiff has active pending claims against Sun-Eye, Ubaldelli, and Suns. Queen Bee and Rushing have filed for bankruptcy and this action has been stayed with respect to these defendants. Default judgment has been entered against Zarafshan.

# FACTS

According to Plaintiffs, defendants Ubaldelli and Rushing were partners in a business enterprise named Queen Bee of Beverly Hills ("Queen Bee"), in which Ubaldelli and Rushing jointly made decisions regarding the items Queen Bee would buy and sell. (Pls.' Local Rule 56.1 Statement ¶ 6.) Queen Bee maintained a website, on which users could view and place orders for products. (Santana Decl. ¶ 2, Ex. 4.) Queen Bee is described on its website as a "leading wholesale and retail designer boutique, offering the latest trends in authentic European designer accessories." (*Id.* Ex. A.) Among other things, Queen Bee sold designer handbags. (*See, e.g., id.* Ex. A; Schlanger Decl. ¶¶ 4–6; Cochran Decl. ¶¶ 2–10.) Plaintiffs allege that the defendants engaged in "willful and intentional infringement," by offering, selling, advertising, and distributing counterfeit handbags bearing the Chloé trademark. (Am. Compl. ¶¶ 17, 18.)

Rosa Santana is an employee of Kalow & Springut LLP, the law firm representing Plantiffs in this action. (Santana Decl. ¶ 1.) At the direction of Plaintiffs' counsel Milton Springut, Ms. Santana accessed the QueenBeeBeverlyHills.com website, on which two items described as Chloé handbags were offered for sale. (*Id.* ¶ 2.) Santana then contacted the vendor and ordered a "Chloé Paddington Bag" to be delivered to her home in New York City.[2] (*Id.* ¶¶ 2, 3.) The bag was turned over to Mr. Springut the day after it arrived and has been in the firm's possession ever since, except when sent to Plaintiffs' expert to determine its authenticity and when sent to the Court in connection with

---

[2] Plaintiffs, in their opposition brief, state that Ms. Santana purchased the bag "from [the Queen Bee] website." (Pls.' Opp'n 1.) However, Ms. Santana's declaration does not support this characterization. Ms. Santana states that, on December 22, 2005, she accessed the Queen Bee website (Santana Decl. ¶ 2), and, "that same day . . . contacted the vendor" (*id.* ¶ 3) to purchase a "Chloé Paddington" handbag.

Plaintiffs' motion for a preliminary injunction and seizure order in April 2006. (*Id.* ¶¶ 4, 5; Springut Decl. ¶ 12, Apr. 21, 2006; Benschar Decl. ¶ 2.)

Though the bag sent to Ms. Santana bears the Chloé name and was represented on the Queen Bee website as a Chloé product, Sophie Garric, the Production Manager for Chloé International, S.A., has examined the bag and determined that it is a counterfeit. (Garric Decl. ¶¶ 10–12.) Ubaldelli does not dispute that the bags purchased by Plaintiffs' agents are counterfeit and were not manufactured, produced, or in any manner authorized by Chloé or by its corporate affiliates or licensees. (*See* Chloé Local Rule 56.1 Statement ¶ 5; Ubaldelli Local Rule 56.1 Statement ¶ 5.)

Plaintiffs do not assert that Queen Bee sold or delivered any other counterfeit handbags to New York residents. In fact, Plaintiffs note that Queen Bee's sales records indicate that 117 items were sent to consumers in New York and that all bore brand names other than Chloé. (Springut Decl. ¶¶ 2–4, Ex. A, Jan. 7, 2008.) The only Queen Bee sales of Chloé handbags that Plaintiffs specifically identify are (1) the sale to Ms. Santana in New York, (2) a sale to a private investigator hired by Plaintiffs and located in Lawrenceville, Georgia (Cochran Decl. ¶¶ 1–11), and (3) "at least thirty" sales to Lynda Higgins, a retailer located in Naperville, Illinois (*see, e.g.,* Springut Decl. ¶¶ 1–11, Exs. B, D, E, Apr. 21, 2006; Springut Decl. ¶ 5, Jan. 7, 2008). Plaintiffs also assert that Queen Bee's records show sales of "at least an additional 38 units," but do not specify where or to whom these sales were made. (Springut Decl. ¶ 5, Jan. 7, 2008.)

**DISCUSSION**

**I.     Legal Standard**

A motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) challenges the sufficiency of the plaintiff's factual allegations supporting jurisdiction, which are assumed to be true for the purposes of the motion. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). To survive a Rule 12(b)(2) motion made after discovery has ended, the plaintiff must "persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." *Id.* "A plaintiff can make this showing through his 'own affidavits and supporting materials,' containing 'an averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant.'" *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (quoting *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981) and *Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 567 (2d Cir. 1996)). "Ultimately, if a jurisdictional challenge is raised at trial, [a plaintiff] bear[s] the burden of establishing jurisdiction over a defendant by a preponderance of the evidence." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000).

"The breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). "Accordingly, resolution of a motion to dismiss for lack of personal jurisdiction made in the Southern District of New York requires a two-step analysis." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). "First, the court must determine if New York law would confer upon its courts the jurisdiction to reach the defendant . . . under the New York long-arm statute, CPLR.

4

§ 302." *Id.* If personal jurisdiction is permitted under the long-arm statute, the court must then proceed to consider whether the exercise of jurisdiction would be consistent with the Due Process Clause of the Fourteenth Amendment. *Id.*

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Therefore, a defendant must have "certain minimum contacts" with the forum state in order to be subject to jurisdiction in the courts of that state. *Int'l Shoe*, 326 U.S. at 326 (internal quotation marks omitted). In determining whether "minimum contacts" exist, "[t]he crucial question is whether the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws such that [the defendant] should reasonably anticipate being haled into court there.'" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242–43 (2d Cir. 2007) (quoting *Burger King*, 471 U.S. at 474, 475). "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476–77 (quoting *Int'l Shoe*, 326 U.S. at 320).

A court may exercise "specific jurisdiction" over a defendant for a cause of action "arising out of or related to the defendant's contacts with the forum." *Metro. Life Ins.*, 84 F.3d at 567–68 (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16 & nn. 8–9 (1984)). "General jurisdiction," which may apply when a defendant has

"continuous and systematic" contacts with the forum, *Helicopteros*, 466 U.S. at 414–15, "permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Metro. Life Ins.*, 84 F.3d at 567–68. Plaintiffs assert only specific jurisdiction over Ubaldelli.

## II.    Analysis

Plaintiffs seek to base specific personal jurisdiction over Ubaldelli on two alleged contacts with the State of New York: (1) Queen Bee's sale of one counterfeit Chloé bag to Ms. Santana in New York, and (2) the "offer for sale" of counterfeit Chloé bags on the Queen Bee website, which is accessible to New York residents.[3] Assuming *arguendo* that the contacts of Queen Bee can be attributed to Ubaldelli for jurisdictional purposes,[4] the Court considers each of these alleged contacts in turn.

---

[3] Plaintiffs note that Queen Bee has sold other designers' products to customers in New York. Plaintiffs concede, however, that these are not a basis for specific jurisdiction. (Pls.' Opp'n 8.) While these contacts indicate Queen Bee's purposeful availment of the New York forum for *some* business activity, they do not indicate purposeful availment of the New York forum for the purpose of selling Chloé handbags—the only activity upon which Plaintiffs' complaint is based. "Supreme Court and Second Circuit authority is quite clear on this matter: specific jurisdiction requires a showing that Plaintiffs' claim 'arises out of or relates to' [the defendant's] contacts with the forum." *Del Ponte v. Universal City Dev. Partners, Ltd.*, No. 07 Civ. 2360 (KMK), 2008 WL 169358, at *8 (S.D.N.Y. Jan. 16, 2008). Plaintiffs' cause of action for infringement of the Chloé trademark does not arise out of or relate to Queen Bee's sales of Gucci, Prada, Fendi, or other designers' merchandise.

[4] Plaintiffs allege that Ubaldelli was "a conscious dominant and active force behind the wrongful acts of Queen Bee, which wrongful acts has engaged in [sic] for the benefit of Queen Bee and for his own individual gain and benefit." (Am. Compl. ¶ 7.) Ubaldelli does not dispute this allegation in his motion to dismiss papers. In any event, in order to attribute a business entity's contacts to an individual defendant under New York law, a plaintiff must "only convince the court that [the business entity] engaged in purposeful activities in this State in relation to his transaction for the benefit of and with the knowledge and consent of the [individual defendant] and that they exercised some control over [the business entity] in the matter." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988).

### A. Ms. Santana's Purchase

Ubaldelli claims that Queen Bee's sale of a counterfeit Chloé handbag to Ms. Santana is insufficient to support jurisdiction because it is a "manufactured contact"—a purchase made not by an "actual consumer[]," but by a representative of Plaintiffs. (Ubaldelli Br. 4.)

It is apparently not uncommon in trademark, copyright, and patent infringment cases for plaintiffs to attempt to base personal jurisdiction over defendants on sales made either to the plaintiffs themselves or to plaintiffs' counsel or representatives. As a result, there are a number of opinions addressing this issue. A review of these cases reveals that most courts, both in this circuit and elsewhere, have found that personal jurisdiction may not be based on contacts "manufactured" by a plaintiff in this way, though the courts have relied on different rationales for this conclusion. *See, e.g., Mattel v. Anderson*, No. 04 Civ. 5275 (RCC), 2005 WL 1690528, at *2 (S.D.N.Y. July 18, 2005) (holding that purchase by plaintiff's investigator did not confer specific jurisdiction because the purchase "ha[d] nothing to do with" the trademark infringement claims since the purchaser "cannot claim to have been confused as to with whom he was dealing"); *Stewart v. Vista Point Verlag*, No. 99 Civ. 4425 (LAP), 2000 WL 1459839, at *4 (S.D.N.Y. Sept. 29, 2000) (holding that plaintiff's order of allegedly infringing product did not confer jurisdiction because this contact was initiated by plaintiff, not defendant); *Elbex Video Kabushiki Kaisha v. Taiwan Regular Elec. Co.*, 93 Civ. 6160 (KMW), 1995 WL 224774, at *2–3 (S.D.N.Y. Apr. 14, 1995) (holding that exercise of jurisdiction based on single sale arranged by plaintiff "would offend traditional notions of 'fair play and substantial justice.'"); *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 88–89

(E.D.N.Y. 2006) (holding that sales made to employee of plaintiff's predecessor-in-interest and employee of plaintiff's counsel did not support specific jurisdiction because there was no likelihood of confusion associated with these purchases and because "jurisdiction cannot be manufactured by the plaintiff"); *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 112 (D. Conn. 1998) (holding that sale initiated by plaintiff did not support jurisdiction because "under such circumstances a defendant cannot be said to have purposefully availed itself of the forum"); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 395, 400–01 (4th Cir. 2003) (holding that there was no personal jurisdiction over defendant despite donation made by plaintiff's counsel through defendant's allegedly infringing website); *Clarus Transphase Scientific, Inc. v. Q-Ray, Inc.*, No. C 06-3450 JF (RS), 2006 WL 2374738, at *3 n.4 (N.D. Cal. Aug. 16, 2006) (stating, without discussion, that "[a] plaintiff cannot manufacture personal jurisdiction in a trademark case by purchasing the accused product in the forum state"); *Jell-E-Bath Inc. v. Crystal Mud Spa*, No. 05-1703-KI, 2006 WL 1305113, at *3 (D. Or. May 8, 2006) (stating, without discussion, that "Plaintiff cannot manufacture personal jurisdiction"); *McGill Tech. Ltd. v. Gourmet Techs., Inc.*, 300 F. Supp. 2d 501, 505–06 (E.D. Mich. 2004) (holding that price quotation requested by and prepared for relative of plaintiff's counsel did not constitute defendant's purposeful availment of the forum); *Millenium Enters., Inc. v. Millenium Music, LP*, 33 F. Supp. 2d 907, 911 (D. Or. 1999) (holding that purchase by acquaintance of plaintiff's counsel did not constitute defendants' purposeful availment of the forum and was unrelated to plaintiff's trademark infringement claims because there was no likelihood of confusion associated with the purchase); *DeSantis v. Hafner Creations, Inc.*, 949 F. Supp. 419, 425 n.15 (E.D. Va. 1996) (holding that sale to

employee of plaintiff's counsel did not confer jurisdiction because "purposeful availment" analysis precludes plaintiffs from manufacturing jurisdictional circumstances); *Regent Lighting Corp. v. Am. Lighting Concept, Inc.*, 25 F. Supp. 2d 705, 711 (M.D.N.C. 1997) (holding that sales made to plaintiff's employee did not support personal jurisdiction because "the contacts to be considered for purposes of personal jurisdiction are those actually generated by Defendants, not those created by the unilateral acts of Plaintiff"); *see also Unique Indus., Inc. v. Sui & Sons Int'l Trading Corp.*, No. 05 Civ. 2744, 2007 WL 3378256, at *5–6 (S.D.N.Y. Nov. 9, 2007) (reviewing cases on manufactured jurisdiction but deferring ruling pending jurisdictional discovery); *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 Civ. 2988 (GBD), 2007 WL 725412, at *4–5 (S.D.N.Y. Mar. 12, 2007) (holding that plaintiff had made a prima facie showing of personal jurisdiction based on one confirmed sale to plaintiff's investigator plus allegations of other New York sales); *Cornice Techs. Inc. v. Affinity Dental Prods., Inc.*, No. 04 Civ. 01133, 2005 WL 1712124, at *6 (D. Colo. July 21, 2005) (reviewing cases on manufactured jurisdiction and denying motion to dismiss based, in part, on "reasonable inference" that other allegedly infringing products had been sold in the forum); *but see Mattel v. Procount Bus. Svcs.*, No. 03 Civ. 7234 (RWS), 2004 WL 502190, at *2 (S.D.N.Y. Mar. 10, 2004) (holding that sale to plaintiff's investigator was sufficient for assertion of personal jurisdiction over defendant, finding purchaser's identity to be "irrelevant"); *Mattel v. Adventure Apparel*, No. 00 Civ. 4085 (RWS), 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001) (same); *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1076 & n.2, 1077–79 (C.D. Cal. 1999) (exercising personal jurisdiction

based on two internet sales made after the filing of the complaint to persons associated with the plaintiff).

In this case, the Court holds that the sale to Ms. Santana is not a contact that can be used to support specific jurisdiction because Plaintiffs' cause of action does not arise out of or relate to this sale. *See, e.g., Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1027 (2d Cir. 1997) ("To establish the minimum contacts necessary to justify 'specific' jurisdiction, the [plaintiff] first must show that [his] claim arises out of or relates to [defendant's] contacts with [the forum state]."). The counterfeit handbag in question was purchased by an agent of Plaintiffs' counsel and subsequently maintained almost continuously in counsel's possession and/or control. There is no likelihood of either "point-of-sale" or "post-sale" confusion associated with such a purchase. *See, e.g., Mattel v. Anderson*, 2005 WL 1690528, at *2; *Unique Indus.*, 2007 WL 3378256, at *6; *ISI Brands*, 458 F. Supp. 2d at 88; *Millenium Enters.*, 33 F. Supp. 2d at 911.

Furthermore, even though Queen Bee has demonstrated its willingness to sell to New York residents, the Court believes it would violate due process to permit a plaintiff to manufacture personal jurisdiction by purchasing an allegedly infringing product in a plaintiff's forum of choice. "[M]inimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Burger King*, 471 U.S. at 477–78; *see, e.g., Elbex Video Kabushiki Kaisha*, 1995 WL 224774, at *2–3 (finding, where only in-forum sale of allegedly infringing product had been arranged by the plaintiff, "that the exercise of jurisdiction over [defendant] on the facts properly before this court would offend traditional notions of 'fair play and substantial justice'"); *DeSantis*, 949 F.

Supp. at 424 ("To hold [that jurisdiction may be based on purchase by employee of plaintiff's counsel] would grant plaintiffs the power to manufacture jurisdiction in a forum that presents hardship and inconvenience to defendants."). In this case, in which all of the relevant activity took place outside of New York, it would be unreasonable to exercise personal jurisdiction over defendants in this district on the basis of a contact that would not exist but for this litigation.

### B. The Queen Bee Website

In analyzing personal jurisdiction based on internet contacts, some courts have found it useful to characterize the website at issue according to a "sliding scale of interactivity," *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007), originally proposed in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). As summarized by one court in this district:

> [T]he courts have identified a spectrum of cases involving a defendant's use of the internet. At one end are cases where the defendant makes information available on what is essentially a 'passive' web site. This use of the internet has been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant. At the other end of the spectrum are cases in which the defendant clearly does business over the internet, such as where it knowingly and repeatedly transmits computer files to customers in other states. Finally, occupying the middle ground are cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction.

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000) (internal citations omitted).

The Second Circuit has not clearly endorsed or rejected this approach, but has commented that it "may help frame the jurisdictional inquiry in some cases," while cautioning that it "does not amount to a separate framework for analyzing internet-based jurisdiction," and that "traditional statutory and constitutional principles remain the touchstone of the inquiry." *Best Van Lines*, 490 F.3d at 252.[5]

With this in mind, the issue before the Court is whether personal jurisdiction can be exercised in New York based on a defendant's interactive website that permits users to view allegedly infringing products[6] and place orders for such products,[7] when the defendant has made no sales of the allegedly infringing product to New York residents other than a sale arranged by the plaintiffs' counsel.

The jurisdictional treatment of interactive websites by the district courts in this circuit is not easily synthesized. It is generally accepted that a wholly "passive" website is insufficient to support personal jurisdiction over its owner. *See, e.g., Citigroup*, 97 F. Supp. 2d at 565; *Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, 2008 WL 1700196, at

---

[5] The court's discussion focused on the application of the *Zippo* spectrum to personal jurisdiction under section 302(a)(1) of the New York long-arm statute, which permits specific jurisdiction over a defendant that "transacts . . . business" or "contracts . . . to supply goods or services" in the state. *Best Van Lines*, 490 F.3d at 251–52. While acknowledging that the *Zippo* spectrum "may . . . be helpful in analyzing whether jurisdiction is permissible under due process principles," the court "express[ed] no view as to the relevance of the *Zippo* sliding scale in New York in evaluating whether the exercise of jurisdiction would be consistent with due process." *Best Van Lines*, 490 F.3d at 252 n.13.

[6] Though neither party addresses this issue, the Court assumes for the purposes of this motion that the photographs of the Chloé handbags on the Queen Bee website depicted counterfeit bags and that this offer for sale was potentially associated with consumer confusion actionable under the Lanham Act.

[7] The Court gleans from the materials attached to Ms. Santana's declaration that the Queen Bee website displayed photos of Queen Bee's products and permitted customers to submit, but not complete, orders for products through the website. (Santana Decl. Ex. A.) After the order was submitted, Queen Bee provided the customer with a "quote," though it is not clear whether this was communicated via the website or via a separate communication. (*Id.*) The user submitted payment either by telephone, mail, or Paypal, a separate, unaffiliated website. (*Id.* Exs. A, B.) The website also permitted users to submit comments and/or questions. (*Id.* Ex. A.)

*6 (S.D.N.Y. Apr. 4, 2008) ("Internet websites that are not of a commercial nature and do not permit the purchase of products on-line are not sufficient to confer personal jurisdiction pursuant to section 302(a)(1)."); *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 267 (S.D.N.Y. 2007) ("The website did not sell memberships, communicate with customers, or engage in any form of transaction. Rather, it acted as a pass-through site that redirected all visitors to [another site]. Passive websites of this kind have been 'analogized to an advertisement in a nationally-available magazine or newspaper,' and in the absence of additional connections to New York do not render a defendant subject to personal jurisdiction in this Court." (quoting *Citigroup,* 97 F. Supp. 2d at 565)); *Aqua Prods., Inc. v. Smartpool, Inc.*, No. 04 Civ. 5492, 2005 WL 1994013, at *5 (S.D.N.Y. Aug. 18, 2005) ("Passive websites which primarily make information available to viewers, but do not permit an exchange of information, [do not] justify the exercise of specific jurisdiction over a non-domiciliary."); *Bensusan Rest. Corp. v. King,* 937 F. Supp. 295, 301 (S.D.N.Y. 1996) ("Creating a site, like placing a product into the stream of commerce, may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state."); *see also Girl Scouts of U.S. v. Steir*, 102 Fed. Appx. 217, 219–21 (2d Cir. 2004) (finding website that "invite[d] only limited interactive content" insufficient to support personal jurisdiction under New York long-arm statute); *Edberg*, 17 F. Supp. 2d at 113–15 (declining to exercise jurisdiction based on defendant's website that permitted users to email representatives with questions or comments, finding the website to be "similar to an advertisement in a national magazine or newspaper").

With respect to "interactive" websites, however, the situation is less clear. Many courts have permitted the exercise of personal jurisdiction based on a defendant's interactive website in combination with other relevant forum contacts. *See, e.g., Energy Brands, Inc. v. Spiritual Brands, Inc.*, 07 Civ. 10644 (DC), 2007 WL 2747276, at *7–8 (S.D.N.Y. July 16, 2008) (exercising jurisdiction based on twenty-nine sales of bottled water to New York customers through interactive website); *Hsin Ten*, 138 F. Supp. 2d at 456 (exercising jurisdiction based on "highly interactive website" and, *inter alia*, sales of allegedly infringing product to New York residents); *Savage Universal Corp. v. Grazier Constr.*, 04 Civ. 1089 (GEL), 2004 WL 1824102, at *1–2, *7–11 (S.D.N.Y. Aug. 13, 2004) (exercising jurisdiction based on interactive website with allegedly infringing domain name, where website was created for the purpose of damaging New York plaintiff's reputation and business); *Philip Morris USA*, 2007 WL 725412, at *3–5 (exercising jurisdiction based on defendant's websites through which orders can be placed and plaintiff's allegations of "significant and continuous revenue" from in-forum sales); *Sunlight Solutions, LLC v. Birnbaum*, No. 06-CV-683A, 2008 WL 724215, at *1–5 (W.D.N.Y. Mar. 17, 2008) (exercising jurisdiction based on defendant's "highly interactive" website, knowledge of New York plaintiff's website and trademarks, and express targeting of New York residents for marketing). Some decisions from this circuit suggest that the operation of an "interactive" commercial website is by itself sufficient to support personal jurisdiction. *See, e.g.*, *Citigroup*, 97 F. Supp. 2d at 565 n.8 (stating in dicta that a website that permits a transaction to be consummated online "clearly does business over the internet in New York"); *Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489, 492 ("If [defendant] wishes to operate an interactive website

accessible in New York, there is no inequity in subjecting [defendant] to personal jurisdiction here. If [defendant] does not want its website to subject it to personal jurisdiction here, it is free to set up a passive website that does not enable [defendant] to transact business in New York."); *Hsin Ten*, 138 F. Supp. 2d at 456 ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant."); *Alpha Int'l, Inc. v. T-Reproductions, Inc.*, 02 Civ. 9586, 2003 WL 21511957, at *3 (S.D.N.Y. July 1, 2003) ("Websites that permit information exchange between the defendant and viewers are deemed 'interactive,' and generally support a finding of personal jurisdiction over the defendant.").[8]

Some cases have suggested that it is not the interactive website itself, but sales or other contacts made through such a website, that are significant for jurisdictional purposes. *See, e.g., Pearson Educ. Inc. v. Shi*, 525 F. Supp. 2d 551, 555–58 (S.D.N.Y. 2007) (exercising jurisdiction where sales had been made through website, and distinguishing previous cases in which no internet sales were alleged); *Unique Indus.*, 2007 WL 3378256, at *2 (holding that the defendant's maintenance of a website that permitted visitors who registered with the site to view and purchase allegedly infringing products was not, "by itself . . . sufficient to confer personal jurisdiction"); *Panacea Solutions, Inc. v. Roll*, No. 05 Civ. 10089 (RCC), 2006 WL 3096022, at *2–5 (S.D.N.Y. Oct. 31, 2006) (finding requirements of New York long-arm statute not satisfied where defendant operated "minimally interactive website" that permitted users to request

---

[8] As another court in this circuit has similarly observed upon review of some of these cases, there were in fact additional contacts supporting jurisdiction in each of these cases. *See ISI Brands*, 458 F. Supp. 2d at 86 ("[T]he Court notes that in these commercial website cases, the [c]ourt's inquiry regarding the existence of personal jurisdiction went beyond the website at issue."); *see also Rosenberg v. PK Graphics*, No. 03 Civ. 6655 (NRB), 2004 WL 1057621, at *1 (S.D.N.Y. May 10, 2004) ("While some courts have held that a highly interactive website may give rise to personal jurisdiction where otherwise there would be none, in all such cases . . . the plaintiff first established some further contact with the forum state.").

15

product information online and noting that plaintiff did not allege that any products had been sold to New York customers); *ISI Brands*, 458 F. Supp. 2d at 87–88 ("Even the existence of an interactive 'patently commercial' website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York."); *Starmedia Network Inc. v. Star Media, Inc.*, No. 00 Civ. 4647 (DLC), 2001 WL 417118, at *4 (S.D.N.Y. Apr. 23, 2001) ("Even with claims of trademark infringement arising in the context of interactive commercial websites, however, there is a serious question as to whether it would be reasonable to allow, in essence, jurisdiction over an alleged infringer wherever the plaintiff's principal place of business is located. Thus, there are sound reasons to require some further connection between the defendant and the forum state." (internal citations and quotation marks omitted)).

The Second Circuit has not directly addressed the extent to which a commercial interactive website, without more, can support personal jurisdiction over a defendant. However, the Court believes that it is more consistent with "traditional statutory and constitutional principles," to require some additional evidence of a defendant's "purposeful availment" of the forum beyond that defendant's maintenance of an interactive commercial website, even when the website permits consumers to place orders online. *Best Van Lines*, 490 F.3d at 252.

Moreover, this approach is consistent with that adopted by other circuits. For example, in *Toys "R" Us, Inc. v. Step Two S.A.*, the Third Circuit held that

> [T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its web site to

the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.

318 F.3d 446, 454 (3d Cir. 2003). The court noted that other circuits had also found that "purposeful availment" required some showing of intentional and/or specific interaction with the forum beyond the mere existence of a website. *Id.* at 453.

Similarly, in *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, the Fourth Circuit held that a defendant's "semi-interactive" website—one "through which there [has] not occurred a high volume of transactions between the defendant and residents of the foreign jurisdiction, yet which [does] enable users to exchange information with the host computer"—does not subject the defendant to personal jurisdiction in a given forum unless the defendant acts "with the manifest intent of engaging in business or other interactions within [the forum]."[9] 334 F.3d 390, 399 (4th Cir. 2003) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002)); *see also Rothschild Berry Farm v. Serendipity Group LLC*, 84 F. Supp. 2d 904, 909 (S.D. Ohio 1999) ("A growing body of law holds that a defendant has not purposefully availed itself of the privilege of doing business within the forum state, merely because it has [a] web site on the Internet, which can be utilized by customers within that state to order products.").

Plaintiffs allege trademark infringement based on Queen Bee's sale of counterfeit handbags, apparently shipped from a location in Alabama. (Springut Decl. ¶ 3, Jan. 7, 2008.) The only sales of counterfeit Chloé handbags that have been specifically

---

[9] In *Carefirst*, the defendant allegedly operated under a name that infringed the plaintiff's trademark rights and maintained websites with domain names that incorporated that name. *Carefirst*, 334 F.3d at 393–95. The court held that the defendant's "semi-interactive" website, which permitted users to make donations online and made a "generalized request" to "anyone, anywhere" for donations, did not subject defendant to personal jurisdiction in Maryland, the forum state. *Carefirst*, 334 F.3d at 400–01.

identified were sent to Lynda Higgins, a retailer in Illinois.  (Springut Decl. ¶¶ 2–14, Apr. 21, 2006.)  It is unclear whether Plaintiffs contend that Queen Bee sold Chloé handbags to anyone other than Ms. Higgins.  (Springut Decl. ¶ 5, Jan. 7, 2008.)  While Queen Bee did offer Chloé handbags for sale on its website, the Queen Bee website did not target New York residents specifically, but made products available for sale to consumers worldwide.  *See Carefirst*, 334 F.3d at 400–01 (holding that a "generalized request" to "anyone, anywhere" for donations did not subject defendant to personal jurisdiction in the forum state); *ISI Brands*, 458 F. Supp. 2d at 87 ("Courts are reluctant to find personal jurisdiction unless the website specifically targets New Yorkers or is aimed at New York users.").  Plaintiffs do not contend that any counterfeit Chloé handbags were purchased by a New York resident (other than Ms. Santana) through the Queen Bee website.  In fact, Plaintiffs apparently concede that no Chloé handbags were purchased by or sent to New York residents.  Under these circumstances, the Queen Bee website does not support the exercise of personal jurisdiction.

Plaintiffs allege no relevant contacts with the New York forum other than Ms. Santana's purchase and the maintenance of the Queen Bee website.  The Court concludes that these contacts, whether considered individually or in combination, are insufficient to permit the exercise of personal jurisdiction over Ubaldelli.

## CONCLUSION

For the reasons discussed herein, Ubaldelli's motion to dismiss **[63]** is GRANTED.  Plaintiffs' claims against this defendant are dismissed.  Plaintiffs' motion for partial summary judgment against Ubaldelli **[65]** is DENIED as moot.

SO ORDERED.

Dated: New York, New York
   August 1, 2008

_____
Richard J. Holwell
United States District Judge