UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
CHLOÉ, a division of RICHEMONT
NORTH AMERICA, INC. and CHLOÉ, S.A.,

                                :

                  Plaintiffs,       **REPORT & RECOMMENDATION**

                                :

        -against-                **06 Civ. 3140 (RJH)(MHD)**

                                :

QUEEN BEE OF BEVERLY HILLS, et al.,

                                :

                Defendants.
----------------------------------x

**TO THE HONORABLE RICHARD J. HOLWELL, U.S.D.J.:**

        Plaintiffs commenced this lawsuit against a number of defendants, asserting that defendants had infringed plaintiffs' registered trademarks, in violation of the Lanham Act, 15 U.S.C. § 1114(1). Among the relief that plaintiffs requested was an award of damages under 15 U.S.C. § 1117, against Mohammed Alexander Zarafshan, a/k/a Alexander Zar (hereinafter "Zar").

        On December 18, 2006, the District Court entered a default judgment against Zar, including a finding of liability and a permanent injunction. (See Order dated Dec. 13, 2006). It then referred the case to us for an inquest for damages. (Order dated Oct. 31, 2008). Following this reference, we directed plaintiffs to

1

serve and file papers on the issue of damages by December 12, 2008 and invited Zar to respond by January 12, 2009. (See Order dated Nov. 21, 2008). Although Chloé timely complied, Zar did not submit any response papers.

We have since directed plaintiffs to submit two supplemental memoranda of law on issues related to the inquest. In the first memorandum, plaintiffs were ordered to address the effect of any settlement with other defendants on the award against Zar. (See Order dated June 19, 2009). Plaintiffs timely responded. (See Pls.' Mem. dated June 23, 2009). In the second memorandum, plaintiffs were to address the legal basis for their assessment that the entire $2.4 million in revenues received by defendant be allocated to the infringing products. (See Order dated July 1, 2009). Again, plaintiffs timely responded. (See Pls.' Mem. dated July 9, 2009).

We conclude that the determination of damages against Zar would not be premature and recommend that plaintiffs should be awarded disgorgement of Zar's profits, and the trebling of that amount, yielding a judgment for $7.2 million.

2

THE PERTINENT FACTS


1.    The Status of Mohammed Alexander Zarafshan


In light of Zar's default, we must accept as true the well-pled allegations of the complaint that are pertinent to liability. See Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004); see also Chen v. Jenna Lane, Inc., 30 F. Supp.2d 622, 623 (S.D.N.Y. 1998); see generally Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). We therefore rely on the factual allegations of the complaint as well as the additional declarations filed by plaintiffs containing pertinent factual allegations. See, e.g., Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993); Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).


Chloé designs, produces, markets and sells high quality goods, including women's clothing and accessories, under its famous "Chloé" trademark in the United States and in many foreign countries. It is the owner of numerous trademark registrations for its "Chloé" trademark, among them, federal trademark registrations in the United States for clothing, clothing accessories, fabrics

3

and other items, including Registration No. 1,491,810 for handbags, purses and other items. (Am. Compl. ¶ 12).[1] Zar had been the supplier of the defendants in this action who have offered for sale, sold, advertised and distributed handbag items bearing copies of the Chloé trademark that are not genuine and are counterfeit. (Id. ¶¶ 9, 17). Defendants' use of the "Chloé" trademark was without plaintiffs' consent and caused injury to its business reputation by causing the purchasing public to believe that the defendants' counterfeit goods conformed to Chloé's standards. (Id. ¶¶ 19, 29).

In 2006, plaintiffs were alerted to the sales of counterfeit handbags by an internet merchant named Queen Bee of Beverly Hills, LLC ("Queen Bee") with locations in Los Angeles, California and Huntsville, Alabama. (Pl.'s Mem. dated Dec. 12, 2008). Chloé brought suit against Queen Bee and its two principals, Rebecca Rushing and Simone Ubaldelli, as well as against Jennifer Suns, an officer and managing agent of defendant Sun-Eye Productions, Inc. ("Sun-Eye"). (Compl. ¶¶ 4-8). Following commencement of the litigation, the Court issued an ex parte order authorizing the seizure of documents and counterfeit goods located at defendants' offices in Huntsville and Beverly Hills. (See Order dated Apr. 25,

---

[1] A copy of that registration is attached as Exhibit A to the Complaint.

2006).

Upon reviewing the seized documents and taking depositions, plaintiffs ascertained that Mr. Zar had been defendants' supplier of counterfeit Chloé products. (Am. Compl. ¶ 9). During the deposition of defendant Ubaldelli, it was revealed that an individual named "Guido" was Queen Bee's sole supplier of handbags, including those handbags that had been seized from Queen Bee and later determined to be counterfeit. (See Milton Springut, Esq. Decl., executed on Dec. 12, 2008 ("Springhut Decl. 1") Ex. A at 31-32). Ubaldelli subsequently identified "Guido" as Mr. Alexander Zar. (Id. Ex. A at 101). Zar's identity was confirmed by email correspondence seized from defendants. (Id. Ex. B).

Ubaldelli stated that he had paid for merchandise from Guido by check, made out to one of two companies, BCBL and A&A Trading, and that Guido had confirmed that he was receiving the funds, stating, "That's my company." (Id. Ex. A at 42). At his own deposition, Zar admitted that he had authority to sign checks on behalf of BCBL on its Wells Fargo bank account. (Id. Ex. C at 81). Furthermore, the A&A Trading bank account lists Mr. Zar's home address in Los Angeles on the opening document. (Id. Ex. D at 108). In the documents subpoenaed from Wells Fargo Bank with respect to A&A Trading and BCBL, the Queen Bee checks often include the word

5

"Guido" on the memo endorsement and in some cases the word "Alex." (See, e.g., id. Exs. F & G).

Following these disclosures, the Court authorized the plaintiff to amend the complaint to add Zar as a defendant. (See Order dated Nov. 1, 2006). Having been served, Zar failed to appear and a default judgment was entered. (See Order dated Dec. 13, 2006). The Order for Default required Zar to produce all documents concerning damages, but he did not produce any documents. (Id.). In addition, prior to their deposition of Zar, plaintiffs served a subpoena upon him, calling for an extensive production of documents. Zar failed to produce any documents in response. (See Milton Springut, Esq. Decl., executed on July 8, 2009 ("Springhut Decl. 2") Ex. A).

Plaintiffs now seek an award of disgorged profits from Zar in the amount of $2.4 million and ask the Court to assess treble profits of $7.2 million, based on Zar's willful conduct. To prepare for the inquest, plaintiffs subpoenaed bank records from Wells Fargo Bank with respect to the two companies that Zar had used to receive payment for the goods. These records reflected a total of $2,467,071.09 in receipts from various customers, including defendant Queen Bee. (See Springut Decl. 1 ¶ 4 & Exs. H & I). At his deposition, Zar was shown numerous copies of checks obtained

6

from Wells Fargo, which were grouped by customer. (See Springut Decl. 2 Ex. B at 85-108). Although he was shown each customer group individually, he claimed not to be able to identify the product reflected in such payments, and in many cases he claimed that he could not even identify the customer. Plaintiffs invited Zar to characterize these transactions, but he denied any knowledge or possession of any documents that would shed light on the issue. (See Springut Decl. 2 Ex. B at 105). Plaintiffs ask the Court to assess treble profits of $7.2 million in light of defendant's "willful and knowing counterfeiting." (Pls.' Mem. at 9).

## 2. The Status of the Other Defendants

Since the inception of the lawsuit on April 24, 2006, there have been notable developments with respect to the other defendants in the suit. On July 10, 2007, defendants Queen Bee and Rebecca Rushing filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Alabama. (See Bankr. Pets. entered July 12, 2007). In light of their pending bankruptcy petitions, the case has been stayed as to these defendants. Plaintiffs settled with defendant Jennifer Suns and her company, Sun-Eye, with entry of a consent judgment in the total amount of $15,000.00. (See Consent J. dated Dec. 29, 2007). Defendant Ubaldelli's motion to dismiss for

7

lack of personal jurisdiction was granted, thereby terminating him from the case. (See Order dated Aug. 1, 2008). By letter dated February 19, 2009, plaintiffs moved to certify Ubaldelli's dismissal from the case as final under Fed. R. Civ. P. 54(b), and the Court then directed the entry of final judgment as to Ubaldelli, finding no just reason for delay. (See Mem. Opinion and Order dated June 29, 2009).

ANALYSIS

1. Prematurity

Because plaintiffs seek an award against only one of multiple defendants, we must first consider whether that assessment is premature. An award of profits under the Lanham Act is ordinarily made jointly and severally against all defendants who participated in or contributed to the infringement. See Gillette Co. v. Wilkinson Sword, Inc., 795 F.Supp. 662, 664-65 (S.D.N.Y. 1992). As noted, defendant Ubaldelli has been terminated from the case pursuant to a motion to dismiss for lack of personal jurisdiction. (See Order dated Aug. 1, 2008). Defendants Queen Bee and Rebecca Rushing have filed for bankruptcy and have had this action stayed as against them. (See Bankr. Pets. entered July 12, 2007).

8

Defendant Jennifer Suns and her company, Sun-Eye, have agreed to pay a total of \$15,000.00 in lieu of any and all claims against them. (See Consent J. dated Dec. 29, 2007). We conclude that under these circumstances, a default judgment specifying an amount of damages against Zar would not be premature.

The principles governing the default of some but not all defendants in a litigation derive from the 1872 decision of the Supreme Court involving an allegation of fraud against fourteen defendants, one of whom failed to plead. Frow v. De La Vega, 82 U.S. 552, 554 (1872). The Court observed that entering a final judgment against one defendant on the merits, while the case was proceeding against the others, could result in an anomaly if there were "one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill." Id. at 554.

Courts have subsequently construed Frow narrowly, holding that if the liability sought to be imposed is joint and several rather than joint, the rationale of Frow does not apply, since it would not be inconsistent to hold some but not all of the defendants liable. See, e.g., Farberware v. Groben, 1991 WL 123964, at *3 (S.D.N.Y. July 3, 1991). Nonetheless, even if liability is joint

9

and several and thus a default may be entered, it may be appropriate in a multi-defendant case to enter judgment solely as to liability against the defaulting defendant, and to await the adjudication of the liability of co-defendants before assessing the amount of damages against all defendants. This approach is justified to avoid inconsistent damage determinations. See Farzetta v. Turner & Newall, Ltd., 797 F.2d 151, 154 (3d Cir. 1986); Martin v. Coughlin, 895 F.Supp. 39, 43 (N.D.N.Y. 1995); Exquisite Form Indust., Inc. v. Exquisite Fabrics of London, 378 F.Supp. 403, 416 (S.D.N.Y. 1974).

In this case, however, the problem of inconsistent damage awards does not arise. As noted, the case has been stayed with respect to defendants Queen Bee and Rebecca Rushing, due to their pending bankruptcy petitions. See 11 U.S.C. § 362(a)(1). The stay is, of course, applicable only to proceedings against the debtor and not to other co-defendants, see, e.g., Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61, 64-65 (2d Cir. 1986), and there is no reason to withhold judgment against Zar while waiting for the bankruptcy proceeding to be resolved.[2] Defendant Ubaldelli has been terminated from the case. Finally, defendants Suns and

---

[2] There is no indication in the record that plaintiffs here have applied to lift the bankruptcy stay.

Sun-Eye have been dismissed pursuant to a settlement.[3]

In sum, there is no compelling reason to withhold a determination of damages to be awarded against Zar at this stage of the proceeding.

## 2. Legal Criteria

Plaintiffs seek disgorgement of Zar's profits and a trebling of those profits. The Lanham Act authorizes several forms of recovery for trademark infringement. Of particular relevance here, the plaintiff may "recover (1) the defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action", and in exceptional cases the plaintiff may also recover reasonable attorney's fees. See 15 U.S.C. § 1117(a). In cases involving the use of a counterfeit trademark, damages may be trebled. See 15 U.S.C. § 1117(b).

An award of an infringer's profits under the Lanham Act serves to compensate the plaintiff for the injuries it suffered as a result of the defendant's infringement. See 15 U.S.C. § 1117(a)

---

[3] We address below the impact, if any, of the settlement against Zar. (See infra pp. 17-18).

11

(stating that an award under the statute "shall constitute compensation and not a penalty"); Lyons P'Ship, L.P. v. AAA Entm't Inc., 1999 WL 1095608, \*10 (S.D.N.Y. Dec. 3, 1999); see also Nintendo of Am., Inc. v. Dragon Pac. Int'l, 40 F.3d 1007, 1011 (9th Cir. 1994) (observing that actual damages under the Lanham Act serve to compensate plaintiffs and prevent defendants' unjust enrichment). To recover an infringer's profits plaintiffs must show that an infringer acted with willful deception, in addition to showing (1) the defendant's unjust enrichment; (2) the plaintiff's damages, if any, from the infringement; or (3) that an accounting for profits is necessary to deter future willful infringement. George Basch Co. v. Blue Coral, Inc., 968 F.2d 1532, 1537 (2d Cir. 1992); see also Gidatex, S.r.L. v. Campaniello Imps., Ltd., 82 F.Supp.2d 136, 141 (S.D.N.Y. 2000). Since, however, the availability of such an award is "subject to the principles of equity," Gidatex, 82 F.Supp.2d at 141, a prevailing plaintiff is not automatically entitled to an accounting for the defendant's profits. See, e.g., W.E. Bassett Co. v. Revlon, Inc., 435 F.2d 656, 664 (2d Cir. 1970). Relief is available, rather, on a discretionary basis against an infringer who has been shown to have acted in bad faith. See, e.g., Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 753 (2d Cir. 1996).

Once plaintiffs have justified an award of the defendant's

12

profits, they must prove only the defendant's sales; the defendant has the burden to prove any costs or deductions from its gross revenues. See 15 U.S.C. § 1117(a). This principle dates back to a decision by the Supreme Court holding that the burden would be on defendant to establish any proper cost to deduct from the entire stream as well as to identify any element of profit that was intrinsic to the product itself and not to the use of the trade name. Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 262 (1916); see also Basch, 968 F.2d at 1539; Gidatex, 82 F.Supp.2d at 141-42. Moreover, if "the actual sales cannot be precisely determined, the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's inadequate record-keeping or failure to produce documentary evidence." Aris Isotoner Inc. v. Dong Jin Trading Co., 1989 WL 236526, *17 (S.D.N.Y. Sept. 14, 1989). See also Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 972 (2d Cir. 1985). It bears noting, however, that some reasonable basis for computation has to be used, even though the calculation may only be approximate. See GTFM, Inc. v. Solid Clothing, Inc., 215 F.Supp.2d 273, 305 (S.D.N.Y. 2002).

3.  Recommended Profits Award

Zar's default amounts to a concession of liability, that is,

13

he knowingly supplied counterfeit goods to his co-defendants. His default in this case underscores his bad faith and reinforces our conclusion that disgorgement of his profits is warranted. See, e.g., Tiffany (NJ) Inc. v. Luban, 282 F.Supp.2d 123, 124 (S.D.N.Y. 2003). We therefore turn to a calculation of those profits.

Plaintiffs seek an award of profits in the amount of $2.4 million. Of necessity, plaintiffs base their profits calculation on bank records subpoenaed from Wells Fargo Bank with respect to the two companies that Zar used to receive payment for the counterfeit goods. These records show a total of $2,467,071.09 in receipts from various customers, including Queen Bee. (See Springut Decl. 1, Exs. H-I).

Plaintiffs concede that these records offer no guidance as to how much of this revenue stream related to Chloé products (as opposed to other products not at issue in this case) or as to the costs incurred in acquiring and selling these products. (Pls.' Mem. at 8). It also does not reflect what portion of Zar's profits for the sale of counterfeit Chloé products is attributable to the trademark, as distinguished from the product itself. These gaps, however, do not affect the ultimate result.

14

On the last point, the Supreme Court held, prior to enactment of the Lanham Act, that where an apportionment between profits attributable to the infringement and those attributable to the intrinsic merit of the product itself is inherently impossible, "it is more consonant with reason and justice that the owner of the trade-mark should have the whole profit than that he should be deprived of any part of it by the fraudulent act of the defendant." Hamilton-Brown, 240 U.S. at 262; Mishwaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 206-07 (1942). Although there is a paucity of Second Circuit case law addressing this issue, other courts have placed the burden of apportioning total revenue for this purpose on the defendant. See, e.g., WMS Gaming, Inc. v. WPC Prod. Ltd., 542 F.3d 601, 607-09 (7th Cir. 2008); Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 64 (1st Cir. 2008) (defaulting defendant bore burden of showing which portion of its revenue stream was attributable to infringement and which was not).

As for the allocation of Zar's revenues between costs of products and profits, the statute expressly provides that "defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Since defendant chose to default and has not appeared in this proceeding, he has necessarily failed to carry his burden to demonstrate deductible expenses.

15

Finally, although it is reasonable to infer that some part of the more than $2.4 million in revenues to Zar is attributable to sales of non-Chloé products, Zar has prevented plaintiffs from ascertaining any facts relevant to the allocation. The default judgment required Zar to produce all documents concerning damages in the action (see Order dated Dec. 13, 2006), but he failed to produce any documents whatsoever. Moreover, Zar failed to produce any documents in response to plaintiffs' subpoena, compelling plaintiffs to subpoena account records from his bank. (See Springut Decl. 2 Ex. A). Furthermore, at his deposition, Zar was shown numerous copies of checks obtained from Wells Fargo Bank, grouped by customer, but he claimed not to be able to identify the products for which he received those payments and, in many cases, not even the customer. Plaintiffs invited Zar to characterize these transactions, but he denied any knowledge or possession of any documents that would shed light on the issue. (See Springut Decl. 2 Ex. B at 105). In view of Zar's refusal to produce discovery and his plainly dishonest performance at his deposition, as well as his subsequent failure to participate in this proceeding, the amount of deposits targeted by plaintiffs -- $2,400,000.00 - should be awarded as disgorged profits from the sale of counterfeit Chloé products.

16

4. Trebling of Profits

Plaintiffs seek an enhanced award that reflects willfulness on the part of Zar. For purposes of trebling the award, an infringement is "willful" if the defendant had "knowledge that its actions constitute an infringement." Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1115 (2d Cir. 1986). This knowledge may be "actual or constructive." Id. Willfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself. See, e.g., Tiffany, 282 F.Supp.2d at 124; Fallaci v. New Gazette Literary Corp., 568 F.Supp. 1172, 1173 (S.D.N.Y. 1983).

Plaintiffs ask the court to assess treble profits of $7,200,000.00. The trebling of defendant's profits is mandatory if the court finds that defendants' actions were willful, absent extenuating circumstances. 15 U.S.C. § 1117(b); Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 971-72 (2d Cir. 1985).

We conclude that Zar is a willful counterfeiter and that the trebling of his profits is appropriate.

17

5.  Set-Off

Since the case has been settled as to defendants Sun-Eye and Suns for a total of $15,000.00, a set-off of the compensatory damage award would normally be appropriate. The Second Circuit has recognized that federal common law governs whether a defendant in an action brought under federal law is "entitled to a credit against judgment for the settlement by another party to the dispute." Singer v. Olympia Brewing Co., 878 F.2d 596, 599 (2d Cir. 1989) (holding that whether to credit a defendant with a set-off affects substantive, not procedural, rights). The United States Supreme Court has held that the amount of any set-off of a damage award should be determined by the jury's allocation of proportionate responsibility to the released defendant. See McDermott, Inc. v. Amclyde, 511 U.S. 202, 213-14 (1994); see also Bragger v. Trinity Capital Enter. Corp., 30 F.3d 14, 17 (2d Cir. 1994) (applying McDermott set-off rule to a securities class action); Gravatt v. City of New York, 73 F.Supp.2d 438 (S.D.N.Y. 1999) (recognizing McDermott governs federal actions brought in New York).

If, however, a party defaults in answering the complaint, courts have held that it may not invoke the benefits of the set-off rule. See RLI Ins. Co. v. King Sha Group, Inc. 598 F.Supp.2d 438,

18

447 (S.D.N.Y. 2009). Zar has twice defaulted: first in failing to answer the complaint, and second in failing to respond to the damages inquest. Hence he has made no attempt to prove that he is entitled to the benefits of the set-off rule. See id. at 447 ("The non-settling defendant bears the burden, however, of establishing the extent to which a recovery against it would be duplicative of the plaintiff's recovery from settling defendants"). Zar has therefore not carried his burden and is ineligible to benefit from the set-off rule.

### 6.   Attorneys' Fees

Plaintiffs are also entitled to an award of reasonable attorney's fees and costs, although they have not sought a specific amount. The Lanham Act authorizes the award of costs in all cases and an award of reasonable attorney's fees in exceptional cases. See 15 U.S.C. § 1117(a). Deliberate and willful infringement can render a case "exceptional" and thus support an award of attorney's fees. See, e.g., Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc., 830 F.2d 1217, 1229 (2d Cir. 1987); see also Spring Mills, Inc. v. Ultracashmere House Ltd., 724 F.2d 352, 357 (2d Cir. 1983) (ruling that district court abused its discretion in failing to consider award of attorneys' fees in case involving willful infringement).

19

Having concluded that the defendant's conduct was willful, we further find that an award of reasonable attorney's fees is appropriate.

## CONCLUSION

For the reasons noted, we conclude that plaintiffs are entitled to recover $7,200,000.00 as disgorgement of profits from the sale of counterfeit Chloé products, as well as reasonable fees and costs. Plaintiffs may serve and file an affidavit with a summary of the costs and fees associated with prosecuting this proceeding and contemporaneous time records by no later than **FRIDAY, JULY 31, 2009.** Defendant Zar may serve and file responding papers by **FRIDAY, AUGUST 7, 2009.**

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Richard J. Holwell, Room 1950, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District court and on later appeal to the

20

United States Court of Appeals. <u>See</u> <u>Thomas v. Arn</u>, 470 U.S. 140, 150 (1985); <u>Small v. Secretary of Health and Human Services</u>, 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**Dated: New York, New York**
       **July 16, 2009**

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

21

Copies of the foregoing Report and Recommendation have been mailed today to:

Milton Springut, Esq.
Tal S. Benschar, Esq.
Kalow & Springut
488 Madison Avenue
New York, NY 10022

Mr. Mohammed Alexander Zarafshan
12621 San Vicente Blvd.
Los Angeles, CA 90049

Mr. Mohammed Alexander Zarafshan
1230 Montana Avenue, Unit 132
Santa Monica, CA 90043