UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHLOÉ, a division of RICHEMONT NORTH
AMERICA, INC. and CHLOÉ, S.A.,

                         Plaintiffs,

    -against-

QUEEN BEE OF BEVERLY HILLS, LLC, et al.,

                        Defendants.

06 Civ. 3140 (RJH)

**MEMORANDUM OPINION
AND ORDER**

---

Plaintiffs Chloé and Chloé, S.A. originally brought this action against defendants Queen Bee of Beverly Hills, LLC ("Queen Bee"), Sun-Eye Productions, Inc. ("Sun-Eye"), Rebecca Rushing, Simone Ubaldelli, Jennifer Suns, Mohammad Zarafshan a/k/a Alexander Zar, and John Does 2–20, alleging trademark infringement and false designation of origin under §§ 32(1) and 43(a)(1) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a)(1), respectively. Chloé now moves for partial summary judgment on liability against defendant Simone Ubaldelli. For the reasons that follow, Chloé's motion is GRANTED.

## BACKGROUND

**I. The Parties**

For the purpose of this motion, the relevant parties are Chloé, S.A., Chloé, and Simone Ubaldelli.

1

### A. Chloé & Chloé, S.A.

Chloé, S.A., a French corporation with its principal place of business in Paris, is the owner of a trademark registration for the word mark CHLOÉ for handbags and other goods. (Copeman Decl. ¶ 1.) Chloé, a division of Delaware corporation Richemont North America, Inc. with its principal place of business in New York, is the exclusive U.S. licensee of the CHLOÉ trademark for all Chloé branded goods. (*Id.*) Plaintiffs operate a fashion company that sells women's clothing and accessories. (*Id.* ¶ 3.) In this opinion, "Chloé" refers to both Chloé, S.A. and Chloé for convenience's sake.

### B. Simone Ubaldelli

In 2001 defendant Simone Ubaldelli opened a business, Italian Only, through which he bought clothing from Italy and sold it to retail stores in the United States. (Benschar Decl. Ex. D ("Ubaldelli Dep.") 9:6-23.) Ubaldelli operated Italian Only out of his office in Beverly Hills, California. (Ubaldelli Dep. 4:14-18, 9:8-15.) A year after opening the business, Ubaldelli began to buy and sell designer handbags through Italian Only as well. (*Id.* at 10:17-24.) In 2003, Ubaldelli met Rebecca Rushing, the registered agent of Queen Bee, who was in the business of selling handbags. (*Id.* at 17:17 – 18:9.) The two reached an agreement under which Ubaldelli would seek out available designer bags and then consult with Rushing to determine which bags to buy for the purpose of resale. (*Id.* at 26:19 – 27:2.) Ubaldelli would then buy these bags and Rushing would sell them at her Queen Bee boutique shop in Huntsville, Alabama or through her website www.QueenBeeBeverlyHills.com. (*Id.* at 18:16-24; Ball Decl. ¶¶ 3, 8; Cochran Decl. ¶¶ 2, 6, 9.) The profits from any sales were deposited into a joint corporate account in the name of "Queen Bee of Beverly Hills," which Ubaldelli and Rushing split between the two of them.

(Ubaldelli Dep. 20:2-12, 21:3-16.) Both Ubaldelli and Rushing had the authority to sign checks for the account. (*Id.* at 27:6-7.)

Ubaldelli's primary source for designer bags was an individual named "Guido."[1] (*Id.* at 31:15-16.) Ubaldelli would purchase bags from Guido and have them delivered to his office in Beverly Hills. (*Id.* at 52:24 – 53:11.) Once he received the bags, Ubaldelli would ship them to Rushing for her to sell. (*Id.* at 53:9-13.) Altogether, Ubaldelli purchased approximately one-hundred bags from Guido, including approximately forty or fifty bags that contained the "Chloé" mark. (*Id.* at 52:8-12.) Ubaldelli also bought roughly six Chloé handbags from an Italian distributor called World Business in Verona. (*Id.* at 31:21 – 33:25.)

## II. Alleged Infringement

Chloé first became aware of the allegedly infringing activities of the defendants in this action in mid-December 2005 when, in the course of a seizure for a separate action, it obtained records of shipments between Sophisticated Spirit, an Internet vendor selling counterfeit Chloé bags, and Queen Bee. (Springut Decl. dated April 21, 2006 ("First Springut Decl.") ¶¶ 3-4.) The principal of Sophisticated Spirit claimed that Queen Bee supplied her with the counterfeit Chloé items. (*Id.* ¶ 4.) At the direction of Milton Springut, a partner for the firm Kalow & Springut LLP, who represent Chloé in this action, Rosa Santana, an administrative assistant at the firm, accessed Queen Bee's website, on which two items described as Chloé handbags were offered for sale. (Santana Decl. ¶ 2.) Santana then contacted Queen Bee and ordered a "Chloé

---

[1] Throughout his deposition, Ubaldelli referred to a man named Guido as his primary source for handbags. At the end of his deposition, however, Ubaldelli acknowledged that "Guido" is an alias for Mohammad Zarafshan a/k/a Alexander Zar. (Ubaldelli Dep. 101:2-4.) For consistency, this opinion will use the name Guido to refer to Ubaldelli's source.

Paddington Bag" to be delivered to her home in New York City.[2] (*Id.* ¶¶ 2, 3.) The bag was turned over to Springut the day after it arrived and has been in the firm's possession ever since, except when sent to Plaintiffs' expert to determine its authenticity and when sent to the Court in connection with Plaintiffs' motion for a preliminary injunction and seizure order in April 2006. (*Id.* ¶¶ 4, 5; First Springut Decl. ¶ 12; Benschar Decl. ¶ 2.) Though the bag sent to Ms. Santana bears the Chloé name and was represented on the Queen Bee website as a Chloé product, Sophie Garric, Production Manager for Chloé, S.A., examined the bag and determined that it is a counterfeit. (Garric Decl. ¶¶ 10–12.)

Plaintiffs also hired a private investigator, Terry Cochran, to purchase a Chloé item from Queen Bee's office in Huntsville, Alabama. (Cochran Decl. ¶¶ 1-2.) Pursuant to his instructions, Cochran called the Queen Bee office and purchased a Chloé Paddington purse. (*Id.* ¶ 9.) Once he received the bag, Cochran shipped it to Kalow & Springut LLP to be examined. Garric determined that this bag is a counterfeit as well. (Garric Decl. ¶¶ 10–12.) Ubaldelli does not dispute that the bags purchased by Plaintiffs' agents are counterfeit and were not manufactured, produced, or in any manner authorized by Chloé or by its corporate affiliates or licensees. (*See* Chloé Local Rule 56.1 Stmt. ¶ 5; Ubaldelli Local Rule 56.1 Stmt. ¶ 5.)

### III. Procedural History

This case first came before the Court in 2006. On November 5, 2007, Chloé moved for partial summary judgment on liability against Ubaldelli and defendant cross-moved to dismiss for lack of personal jurisdiction. By memorandum opinion and order dated August 1, 2008, the

---

[2] Plaintiffs, in their opposition brief, state that Ms. Santana purchased the bag "from [the Queen Bee] website." (Pls.' Opp'n 1, citing Santana Decl. ¶¶ 2-3.) However, Ms. Santana's declaration does not support this characterization. Ms. Santana states that, on December 22, 2005, she accessed the Queen Bee website and, "that same day . . . contacted the vendor" to purchase a "Chloé Paddington" handbag. (Santana Decl. ¶¶ 2-3.)

4

Court granted Ubaldelli's motion and denied Chloé's motion as moot. *Chloé v. Queen Bee of Beverly Hills, LLC*, 571 F. Supp. 2d 518 (S.D.N.Y. 2008). The Court then granted Chloé's motion to certify dismissal as final. *Chloé v. Queen Bee of Beverly Hills, LLC*, 630 F. Supp. 2d 350 (S.D.N.Y. 2009). Chloé appealed. Holding that Queen Bee's single act of shipping a handbag to New York, combined with its extensive business activity involving New York, gave rise to personal jurisdiction over Ubaldelli, the Second Circuit vacated this Court's judgment and remanded for further proceedings. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010). Pursuant to the Second Circuit's decision, this Court then reopened the case.

Ubaldelli is currently the only defendant still actively participating in this litigation. Chloé settled its claims against Sun-Eye and Jennifer Suns. (Consent J. Granting Permanent Inj., Jan. 3, 2008, ECF No. 69.) Queen Bee and Rushing have filed for bankruptcy and this action has been stayed against them. (Queen Bee Notice of Bankruptcy July 12, 2007, ECF No. 56; Rebecca Rushing Notice of Bankruptcy July 12, 2007, ECF No. 57.) Default judgment has been entered against Zarafshan. (Order Granting Default J. Dec. 13, 2006, ECF No. 41.)

By Order dated April 21, 2011, the Court restored Chloé's motion for partial summary judgment on liability against Ubaldelli. (ECF No. 114.) This opinion resolves that motion.

## DISCUSSION

### I.   Legal Standard

Summary judgment is appropriate if the evidentiary record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine if "a reasonable jury" could decide it

in favor of the non-movant. *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it "might affect the outcome of the suit" under controlling law. *Ricci v. DeStefano*, 530 F.3d 88, 109 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). The movant bears the burden to show that no genuine issue of material fact exists. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). For summary judgment purposes, all evidence is to be construed in the light most favorable to the non-movant, and every justifiable inference must be drawn in that party's favor. *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006).

## II. Queen Bee's Infringement

Chloé has moved for summary judgment with respect to Ubaldelli's liability for trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), and for false designation of origin or unfair competition, under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Two issues must be resolved in addressing Chloé's motion. The first question is whether any substantive infringement occurred in Queen Bee's activity. The second is whether Ubaldelli can be held individually liable for that infringing activity. Addressing the first question, it is clear that Queen Bee's activities constitute infringement.

"To prevail on a trademark infringement claim [under Sections 32 and 43(a) of the Lanham Act], a plaintiff must demonstrate [1] that it has a valid mark entitled to protection and [2] that the defendant's use of it is likely to cause confusion." *Time, Inc. v. Petersen Publ'g Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999). In deciding the issue, "[i]t is well established that wrongful intent is not a prerequisite to an action for trademark infringement . . . and that good faith is no defense." *Chloé v. DesignersImports.com USA, Inc.*, 07-CV-1791 (CS)(GAY), 2009

WL 1227927, at *5 (S.D.N.Y. Apr. 30, 2009) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 26 (2d Cir. 2004)).

Here, there is no dispute that Chloé is the owner of a trademark registration for the word mark CHLOÉ for handbags and other apparel, as Chloé has submitted a copy of a certified copy of its federal registration for the Chloé Trademark and defendant admits its validity. (Benschar Decl. Ex. C.) As such, Chloé has satisfied the first prong of the test.

As for the second, it is well recognized that counterfeit items are, by their very nature, confusing to consumers; therefore, while the Court would normally engage in an analysis of the factors enunciated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961), a complete discussion of the *Polaroid* factors is unnecessary in this case. *See Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("the Court need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion"); *see also Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y.1996) ("[W]here the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the *Polaroid* factors . . . ."). Here, it is undisputed that the two Chloé bags that Queen Bee sold to plaintiffs' agents are counterfeits, and therefore, were likely to cause confusion for consumers, satisfying the second element.

As Chloé has established Queen Bee's liability for trademark infringement and false designation of origin or unfair competition, the Court's resolution of plaintiffs' motion will turn on whether Ubaldelli is individually liable for that infringement.

### III.     Individual Liability

It is well established in the Second Circuit that "under the Lanham Act, a corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active[,] conscious[,] force behind [the defendant corporation's] infringement."  *Cartier v. Aaron Faber, Inc.*, 512 F. Supp. 2d 165, 170 (S.D.N.Y. 2007); *accord Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 526, *amended in part,* 328 F. Supp. 2d 439 (S.D.N.Y. 2004) ("Because [the individual defendant] made all of the decisions for [defendant corporation] as to what merchandise to offer for sale, he is liable individually to the same extent as the corporation."); *Calvin Klein Jeanswear Co. v. Tunnel Trading*, No. 98 CIV. 5408 (THK), 2001 WL 1456577, at *6 (S.D.N.Y. Nov. 16, 2001) ("As its sole corporate officer and employee, [individual] defendant unarguably served as the moving, active, conscious force for [corporate defendant's] conduct"); *W. Indian Sea Island Cotton Ass'n Inc. v. Threadtex, Inc.*, 761 F. Supp. 1041, 1054 (S.D.N.Y. 1991) ("The general rule is that a corporate officer who participates in a tort, even if it is in the course of his duties, may be held individually responsible.") (quoting *National Survival Game v. Skirmish, U.S.A., Inc.,* 603 F. Supp. 339, 341 (S.D.N.Y.1985)); *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 913 (E.D.N.Y. 1988) (individual defendants were directly involved in the purchase, approval and resale of infringing products, and therefore liable) (citing *Donsco, Inc. v. Casper Corp.,* 587 F.2d 602, 606 (3d Cir.1978)).  A showing that an officer "authorized and approved the acts of unfair competition which are the basis of [the] . . . corporation's liability . . . is sufficient participation in the wrongful acts to make [the officer] individually liable." *Bambu Sales, Inc.*, 683 F. Supp. at 913-14.  Furthermore, "in determining whether the officer's acts render him individually liable, it is immaterial whether . . . he knows that his acts will result in an infringement."  *Id.* at 913.

The case law is clear that if a corporate officer was either the sole shareholder and employee, and therefore must have approved of the infringing act, or a direct participant in the infringing activity, the officer is a moving, active, conscious, force behind the corporation's infringement.  *See Chloe v. DesignersImports.com USA, Inc.*, No. 07-CV-1791 (CS)(GAY), 2009 WL 1227927, at *11 (S.D.N.Y. Apr. 30, 2009) ("[Individual defendant] was the founder, sole officer and sole shareholder of the [online company], and . . . as such he makes all the business decisions for the [online company], including the decision to purchase from third parties and offer for sale the counterfeit Chloé items . . ."); *Calvin Klein Jeanswear Co. v. Tunnel Trading*, No. 98 CIV. 5408 (THK), 2001 WL 1456577, at *6 (S.D.N.Y. Nov. 16, 2001) ("As its sole corporate officer and employee, [individual] defendant unarguably served as the moving, active, conscious force for [corporate defendant's] conduct"); *Bambu Sales, Inc.*, 683 F. Supp. at 913 (individual defendants were directly involved in the purchase, approval and resale of infringing products, and therefore liable).  Here, Chloé argues that, along with Rushing, Ubaldelli made the decisions as to what Queen Bee would acquire for the purpose of selling to the public and, as a result, he was a moving, active, conscious force behind any sales of counterfeit goods.  Even drawing all reasonable inferences in Ubaldelli's favor, the Court agrees.  Although Ubaldelli was not the sole shareholder of Queen Bee and did not control all of its business decisions, it is nevertheless clear that he was a participant in the infringing behavior.

Ubaldelli's primary role for Queen Bee was to meet with his source, Guido, and ascertain which types of designer handbags were available and for what prices.  With this information, he would contact Rushing to decide which bags to purchase.  (Ubaldelli Dep. 26:14 – 27:2.)   The goal was to determine which bags would generate the most profit by reselling them.  If they

9

found that certain brands were particularly popular with customers, Ubaldelli would purchase more bags with those brands. (*Id.* at 26:14 – 27:2, 52:8-12.) In fact, Ubaldelli explained that he bought greater amounts of Chloé handbags specifically because they sold well. (*Id.* at 52:8-12.) Once he purchased the handbags, Ubaldelli would ship them to Rushing for her to sell through Queen Bee and they would split any profits. (*Id.* at 18:16-24, 20:2-12, 21:3-16.) These facts demonstrate that Ubaldelli was a moving, active, conscious force behind Queen Bee's conduct, and, as such, is liable for its infringement.

 Ubaldelli makes two arguments in his opposition. Both are unavailing. First, he argues that there is no direct evidence that he purchased, shipped, or possessed the two counterfeit bags that plaintiffs' agents purchased from Queen Bee. The undisputed evidence, however, does not allow for a reasonable inference that Ubaldelli was not involved in the purchase of the infringing bags. Ubaldelli made an agreement with Rushing, in which he would buy designer handbags for the purpose of reselling them under the Queen Bee corporate name. While defendant claims that Rushing occasionally bought bags on her own, he also admits that she would generally consult him about these purchases. (Ubaldelli Dep. 27:3-5.) Moreover, the only purchases of Chloé handbags on behalf of Queen Bee that are indicated in the record were made by Ubaldelli. (*Id.* at 30:3-25, 52:8-12.) Nowhere in the record is there evidence that Rushing also purchased Chloé bags on her own. Because the record indicates that Ubaldelli was both Queen Bee's chief purchaser for designer handbags and the only person to purchase bags bearing the "Chloé" mark for Queen Bee, no reasonable juror could infer that Ubaldelli was not involved with the purchase of the two counterfeit Chloé bags.

Defendant's second argument is that he was not an officer or director of Queen Bee and therefore is not liable for its trademark infringement. Defendant, however, fails to cite any authority to support this claim. While Ubaldelli highlights cases that only use the term "officer," when discussing individual liability, there are other cases that use the term "employee." *See Microsoft Corp. v. Computer Care Ctr., Inc*., No. 06-CV-1429 SLT RLM, 2008 WL 4179653, at *7 (E.D.N.Y. Sept. 10, 2008) ("Where the facts show that a *corporate employee* was the 'moving, active conscious force behind [the defendant corporation's] infringement,' personal liability will attach.") (emphasis added) (quoting *Bambu Sales, Inc.*, 683 F. Supp. at 913); *see also* 4 McCarthy on Trademarks and Unfair Competition § 25:24 (4th ed.) ([M]anaging employees can be held personally liable if they are the "moving, active, conscious forces behind" the corporation.).

Furthermore, officer or director status is not a prerequisite to individual liability. Instead, "[t]he only crucial predicate to [an individual's] liability is his participation in the wrongful acts." *Donsco, Inc.*, 587 F.2d at 606; *see also Mead Johnson & Company v. Baby's Formula Service, Inc.*, 402 F.2d 19, 23 (5th Cir. 1968) ("There can be no doubt but that a trademark . . . can be infringed by an individual . . . The fact that the persons . . . are acting for a corporation also, of course, may make the corporation liable . . . [but] it does not relieve the individuals of their responsibility."). Whether Ubaldelli was an officer for Queen Bee does not determine his liability; rather it is his participation in the infringing conduct that is determinative.

Finally, the only case that the parties cite that appears to address a similar argument is *Metromedia Steakhouses Co., L.P. v. Resco Mgmt., Inc.*, 168 B.R. 483 (D.N.H. 1994). In *Metromedia Steakhouses*, defendant restaurant manager moved to dismiss plaintiff trademark

11

owner's claims of infringement, arguing that he could not be held liable for the restaurant management company's trademark infringement because he was never an "owner, officer or director of the [company]." *Id.* at 486.  The court denied defendant's motion, holding that "[a]n individual, including a director, officer, or agent of a corporation, may be liable for injuries suffered by third parties because of his torts, regardless of whether he acted on his own account or on behalf of the corporation." *Id.* at 487 (quoting *Al–Khazraji v. St. Francis College,* 784 F.2d 505, 518 (3d Cir. 1986)).  The court reached its holding, in part, by analyzing Sections 32 and 43(a) of the Lanham Act, and deciding that "[p]ursuant to the plain language of the Lanham Act, *any individual* may be liable in civil actions for damages.  *Id.* at 486 (emphasis in original).

   Here, whether Ubaldelli can be considered an officer of Queen Bee is not an issue that is essential to finding him liable, as courts have found that corporate employees, regardless of their officer status, can be held individually liable for the torts they commit, such as trademark infringement, on behalf of a corporation.  Ubaldelli made the purchase decisions with Rushing and specifically purchased Chloé handbags for Rushing to resell through Queen Bee's office and website.  Two of the bags were counterfeit.  It is this participation in the infringing conduct of selling counterfeit Chloé bags that makes Ubaldelli individually liable.

## CONCLUSION

For the foregoing reasons, Chloé's motion for partial summary judgment **[65]** on liability against Ubaldelli is GRANTED.

SO ORDERED.

Dated: New York, New York
       August 19, 2011

_____
Richard J. Holwell
United States District Judge